MATHEWS, Justice.
This is an appeal from a final decree enjoining the appellants from maintaining on the right of way of a public road a concrete building which encroached upon the right of way about 11 feet.
The right of way involved was formerly a part of State Roads No. 4 and No. 5, and part of U. S. Highway No. 1. Until the new road was constructed and open to traffic, the old road was maintained as a part of the arterial highway from Fort Pierce, north, and it appears from the record that it had been a public highway for more than 20 years. Many curves existed on the old road which were eliminated by the construction of the new road. The right of way to that part of the old road involved in this action was acquired by deed to the State Road Department in 1926. The deed contained the following clause:
“This deed is made for the purpose of giving and granting to the party of the second part, its successors, legal representatives and assigns, a right of way and easement in and to the said lands for public highway purposes; and is made, executed and delivered with the express understanding and condition that should the same ever be discontinued or abandoned as a public highway, the title to the same shall thereupon revert to and revest in the parties of the second part, their heirs or assigns.” (Emphasis supplied.)
After the acquisition of this deed the State Road Department constructed and maintained for use by the public a highway over and upon the right of way. In 1949 the State Road Department constructed a new highway and after the new highway was completed, the State Road Department abandoned the old right of way and turned the same back to the county. The record shows copies of certificate and letter concerning the abandonment of the old right of way sent by the Chairman of the State Road Department to the Clerk of the Circuit Court of St. Lucie County as follows:
*664 “State of Florida
County of Leon
“The State Road Department of Florida, by and through its undersigned officers, hereby certifies that the attached copy of letter and map are; true copies of a letter and attached map furnished by said Department to the Clerk of the Circuit Court of St. Lucie County as Clerk of the Board of County Commissioners of St. Lucie County by mail on March 9, 1949, and that the portions of Old State Road S shown in heavy line on said map were returned to St. Lucie County for maintenance as of said date by and through said letter and map. -
“Dated at Tallahassee, Florida this 9 day of July, 1952.
“Attest: “State Road Depart-as/ ment of Florida
R. M. Harfsfield /s/ By: Alfred A.
Secretary ,_Mc.Kothan
(Seal) Chairman”
“State Road Department of Florida Tallahassee March 9, 1952
“Clerk of Circuit Court
St. Lucie County
Fort Pierce, Florida
“Dear Sir:-
“Please inform your Board of County Commissioners that the State Road Department is abandoning and turning back to the County the portions of old State Road 5 shown in heavy blue line on the attached map, amounting to a total of 2.893 miles. Rural portions amount to 2.727 miles and 0.166 mile is within the limits of the City of Fort Pierce.
“When the State Road Department completes a new road paralleling and superseding an old road which it has been temporarily maintaining until it could, construct the new state road on the official designated route, it is a long established policy of the Department to abandon and turn back to the county the old road, or portion thereof, it had been maintaining until it could construct the new road.
“.Very truly yours,
/s/ Alfred A. McKethan
Chairman”
The appellants purchased land adjacent to the old highway, but according to the description, encroached upon the right of way. of the old road. Appellants knew this at the time of the purchase but claimed title to and ownership of the entire tract of land described in the deed which included a portion of the right of way. The road was there and in actual use at the time of the purchase. Appellants contend that the action of the State Road Department was an abandonment of the right of way as a public highway and, therefore, the title reverted to and was revested in them. There is no merit in this contention. It is clearly shown by the record that the right of way was not abandoned as a public highway but that the same was abandoned and turned back to the county for maintenance as a public highway.
The record shows that notwithstanding the construction of a new' road, the old road was used by residents in the neighborhood and the county took over the old road for maintenance after the same was abandoned to it for that purpose. There is no suggestion in the record that the county had abandoned or attempted to abandon the right of way.
. The record shows that the appellants were warned by a representative of the county that the construction of the building in question was a trespass on the right of way. This was followed by a letter addressed to appellant, J. W. Dickson, again calling his attention to the encroachment and calling upon him to remove the building. The construction of the building on the right of way was not due to accident or mistake but was done deliberately by the appellants under a claim that the right of way had been abandoned for public highway purposes and, therefore, they were the owners of the land. Under these circumstances it was the duty of the -county, acting through its Board of County Commissioners, to take the necessary action .for the protection of the public. The degree of encroachment is not material. The appellants erected the building in question by asserting title to and ownership of the land in question. Should he be permitted to *665 maintain the building on the land under the facts and circumstances disclosed by this record for a sufficient length of time, their title to and ownership of the land may be established by prescription.
The appellants contend that the building was not an encroachment because it did not block the entire highway but was 8 or 10 feet from the paved portion of the highway. This contention is without merit. Because the pavement was only 16 feet or 32 feet in width does not mean that the right of way should only be 16 feet or 32 feet. There may have been a time when the necessary right of way was only that portion of the land actually used for traveling. Such is not the case with reference to modern highways. The modern right of way is much wider than the actual pavement and provides for slopes, ditches, landscaping, beautification, and public utilities which do not interfere with the use ■of the right of way for highway purposes. In acquiring rights of way public officials are no longer confined to acquiring only so much land as is necessary for pavement today but they may look to the future and acquire rights of way sufficient to take care of the needs of the foreseeable future. It is a matter of common knowledge that paved portions of highways are constantly being widened all over the state. When public convenience and necessity require the widening of an old road, if the public authorities did not secure a right of way of sufficient width at the time of the original construction, it is necessary that they acquire such additional right of way before the required improvement can be made.
The appellants assign as error the fact that the trial judge viewed the property in question before the entry of his final decree.
It appears from the record, “the Court, accompanied by the Attorneys for the respective parties, personally inspected the premises and the highway involved.” It appears that the attorney for the appellants voluntarily went with the attorney for the appellee and the trial Judge for a personal view and inspection. No objection was made by anyone. If the appellants were not satisfied with the viewing and inspecting, some objection should have been made. Having failed to make any objection or to file a petition for rehearing, their objection after the appeal was taken and by assignment of error, is too late.
Affirmed.
ROBERTS, C. J., and TERRELL and SEBRING, JJ., concur.