CRAWLEY, Judge.
In February 1995, Mobile County filed a complaint for a declaratory judgment against Tony A. Isham and Alice R. Isham, requesting that it be declared to be the owner of certain real property. The Ishams answered, contending that they have fee simple title to the disputed real property. Following the presentation of ore tenus evidence, the trial court ruled that the Ishams owned the property. The county appealed to the Supreme Court, which transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6). The county argues that the trial court erred in ruling that the Ishams own the real property.
The history of the disputed real property began in 1912, when the Grand Bay Land Company filed in the Mobile Probate Court a subdivision plat for the Pine Crest addition to the Grand Bay subdivision. The plat designated four parcels, including the real property involved in this case, in the subdivision as “Park.” In 1946, J.O. Cox, the trustee for the Grand Bay Land Company quitclaimed several parcels to T.A. Isham. The quitclaim deed included “unplatted pieces of land reserved for park purposes located in Pine Crest addition to Grand Bay, Mobile County, Alabama.” After T.A. Isham’s death, his wife, Clara D. Isham, inherited the property, and in 1964, she conveyed the property to their son, Tony A. Isham, and his wife, Alice R. Isham. The 1964 deed conveyed 21 parcels in the Pine Crest addition and “the unplatted parcel of land reserved for park purposes.”
The county argues that the 1912 subdivision plat recorded in the probate office amounted to a dedication of the real property labeled “Park” to the public, i.e., the county. Ala.Code 1975, § 35-2-50, provides:
“Any person, or his administrator, executor or guardian, desiring to subdivide his lands into lots shall cause the same to be surveyed by a competent surveyor, if not already surveyed, and shall cause a plat or map thereof to be made, showing the subdivisions into which it is proposed to divide the same, giving the length and bearings of the boundaries of each lot and its number; and, if it is the purpose of the owner to divide the lands into town lots, such plat or map shall show the streets, alleys and public grounds and give the bearings, length, width and name of each street, as well as the number of each lot and block. Such plat or map must show the relation of the lands so platted or mapped to the government survey.”
Section 35-2-51(b) further provides:
“The acknowledgment and recording of such plat or map shall be held to be a conveyance in fee simple of such portion of the premises platted as are marked or noted on such plat or map as donated or granted to the public, and the premises intended for any street, alleyway, common or other public use, as shown in such plat or map, shall be held in trust for the uses and purposes intended or set forth in such plat or map.”
Our supreme court has held that parcels marked “Park” are dedicated to the public once they are marked on a plat recorded in compliance with the above-quoted statutory provisions. Smith v. Duke, 257 Ala. 86, 57 So.2d 550 (1952) (interpreting Ala.Code 1940, Tit. 56, § 13, the substantively similar predecessor to § 35-2-51(b)). Therefore, we conclude that the “Park” parcels have been dedicated to the county in compliance with these statutes.
Although, the county has proved that the “Park” parcels have been dedicated, the county must also prove that it accepted the dedication. Vestavia, Hills Bd. of Educ. v. Utz, 530 So.2d 1378 (Ala.1988). The acceptance of a dedication must occur before the dedication is revoked. Id. In this case, the county must prove that it accepted the dedication before the Grand Bay Land Company deeded the “Park” parcels to the Ishams’ predecessor in title in 1946, which conveyance would have revoked the dedication.
An acceptance of a dedication can occur by (1) governmental action, such as formal ratification of an acceptance or government sponsored improvements, or by (2) public use. Id. In this case, there is no *636 evidence of any governmental action to accept the dedication. The Utz case discussed in detail how public use amounts to an acceptance of a dedication:
“ ‘Under common law principles, property dedicated for public use may also be accepted by the use of the same by members of the public for the purposes for which the same was dedicated. The following comments from 23 Am.Jur.2d Dedication § 54, discuss the character of the acts required to establish such use by the public:
“ ‘ “In those jurisdictions in which user is a method of acceptance, there is no established standard by which the use necessary to determine an acceptance by the public may be measured and declared to be sufficient, but as a rule a use that would naturally follow from the space and the settlement of the community is sufficient. In other words, the sufficiency of the user depends on the circumstances of each case. The user must, however, be of such character as to indicate the intention to accept the property for the particular purpose to which it was dedicated.
“ ‘ “The public use need not necessarily be constant, but merely continuous in the light of the particular nature of the land. For example, where acceptance by public user relates to a public park or beach, the use by the public during appropriate seasons by going on the land, occupying it for camping purposes, parking automobiles, eating lunches, and viewing the ocean is sufficient to establish the fact of acceptance. But the occasional use of land as a camping ground or as a road by strangers, there being nothing to identify it as a park, such as the planting and maintenance of shrubbery, does not constitute public acceptance of an offer to dedicate the land as a park.
‘““Acceptance of dedication may be shown by use by a comparatively small number of persons, as in the ease of a short street to the seashore. Acceptance by a portion of the public inures to the benefit of all, and gives those performing the user no right to appropriate the premises for private purposes.”’”
Id., 530 So.2d at 1383-84.
After reviewing the record, we conclude that the county failed to prove that it ever accepted the dedication through public use. Although several property owners in the area testified, they all acquired lots after 1946, and their testimony is not relevant for determining public use of those parcels before 1946. Therefore, we affirm the trial court’s judgment declaring that the Ishams are the owners of the “Park” parcels.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur.